Ruano v. Holder. Mr. Kola. Good morning. May it please the court, counsel. My name is Yusuf Kola on behalf of the petitioner in this matter. We're here before you because the Board of Immigration Appeals and the immigration judge denied my client's request for cancellation of removal. As this court is well aware, cancellation removal is a form of relief where a person has to show four different prongs. One is being was here for more than 10 years prior to the initiation of removal proceedings. He doesn't have certain criminal violations. He's a person of good moral character. And the fourth one, which is of value in this case, is that we have to show extreme and unusual hardship to a qualifying member, either a spouse, a parent, or child who's a permanent resident or a citizen. As this court is well aware, normally we lack, you lack, jurisdiction to review these types of cases because they're discretionary cases. However, this court has etched out an exception to that rule, and that is in the form where the Board of Immigration Appeals or the immigration judge fails to consider certain pertinent facts and evidence. And that's what we would be arguing in this case. In looking at this case, the petitioner presented evidence with regard to the situation in Mexico, the violence in Mexico. Neither the immigration judge nor the board, even in passing, references or commences the violence in Mexico and how that would impact his family and his inability for his family to travel to Mexico. How did you present facts describing the trouble in Mexico, the violence? They're presented through testimony through the mother and through the petitioner in this case. The mother hadn't been back for how many years? For a significant number of years, that's correct. She did not go back to Mexico because of the violence that was occurring in Mexico. The petitioner, when asked, would he bring his family down there, said no because of the violence in Mexico. But I would argue even more about that, is that these immigration judges, on a day-to-day basis, deal with cancellation cases, deal with asylum cases from Mexico. They should be aware and they are aware. Well, we deal with Mexico because of drug matters too, but it's also a fact that it applies differently to different states or provinces within Mexico. It definitely does, but in this case we don't even know what the immigration judge thought about that. He didn't mention it even in passing, even as an afterthought or a side thought. The Board of Immigration Appeals, the exact same scenario. We specifically argued, and I captioned that paragraph, more importantly. Now you don't argue, I take it, that nobody can be deported to Mexico. No, I'm not making that argument. All right, so what what is it about him that would make him particularly vulnerable? Well, you know, we do have a situation of the violence in Mexico. We have a situation where the family finance... Come on, that's not my question. What's special about him, not the fact that there's violence in Mexico? It would impact his ability to bring his family to Mexico. The immigration judge and the Board of Immigration... I don't understand why. Well, he testified he would not bring his family to Mexico. Why not? Well, why would he bring his family, jeopardize his family's life in Mexico? That's what he says. I don't understand. So you can't be deported to Mexico. The proposition is, and the law is, that if you can show extreme and unusual hardship to your family... What is the hardship to the family? I don't understand. The family would have to remain in the United States. Their mother is undocumented. Her ability to obtain employment, she was not employed at this time. I don't understand. Why can't the whole family go back to Mexico? Well, as he said, is the violence in Mexico... No, but we've been through that. You can't say no one can be deported to Mexico because there's violence in Mexico. What's the special danger to him? Usually, we'd see cases where someone, they were after him in Mexico. He had been in a gang or something, and he was in danger greater than that of other Mexicans. So what is making a claim that he has a special claim or some special target in Mexico? What I'm saying is, when you look at the extreme... So what is the relevance of violence in Mexico? The relevance of violence in Mexico is, what would be the hardship? A, if he took the family to Mexico, what would they be a target? Would they face hardship there? That's one factor. The other factor is, if he left his family in the United States, as he said he would, what would happen to his family if he didn't bring them to Mexico with him? The financial impact comes into play. The mortgage being upside down comes into play. The fact that his wife has no documentation and can't get documentation all comes into play. So that's where the hardship comes in. We're not saying you can't be deported to Mexico because of violence. We're saying... So violence is irrelevant. Violence is relevant, I would argue in this case, because it shows why he's not bringing his family down there, why it would be imprudent for him to bring his family down there, why he would leave his family up here, and if he brought his family, let's say he left his wife and children and she got the... You're saying the only reason he doesn't want to bring his family with him to Mexico is violence? Well, Your Honor, there's other factors mentioned in the case. The economic hardship to the family in Mexico, the educational hardship in Mexico. But that's always true, isn't it? I mean, Mexico is a poorer country than the United States. So, I mean, obviously he comes here because he thinks conditions are better in the United States. And no one's doubting that. That's true of everybody who comes to the United States, right? Correct, Your Honor, but in this particular case... What's special about him? You know, my argument is the board and immigration judge failed to consider these arguments. They didn't... If they had asked these questions that you're asking now... So you come to the United States, you're an illegal immigrant, you create a family in the United States, you're immunized from deportation. Is that what you're saying? That's not what I'm saying. I'm saying that the United States Congress gave a regulation... Why doesn't he take his family back to Mexico? He has said he won't take them down to Mexico. Why? Because of the violence and the hardship. Well, if we're back to the violence business... Then, Your Honor, I do not know how to answer that question. Why are they particular targets in Mexico? They are not particular targets per se. There's a potential of being a particular target... Well, what is the probability that they will be victims of violence? You know, I think it's more substantial... What is the probability that they'll be victims of violence? I think it's likely. Do we have statistics on this? We don't have statistics on that at this point. Well, that makes it very murky. Why don't you look and see what the different crime rates are in different parts of Mexico, relative to the United States. Understood, Your Honor. There's violence there, there's violence here. What I'm saying is the board and the immigration court never even in passing discusses that. Why would the violence be more likely directed at him than any other Mexican being deported? Violence directed towards people coming from the United States, Mexican... So anyone who's deported faces that risk? A greater threat because they are... So there should be no more deportations to Mexico? That's not what I'm saying. What I'm saying is, at a minimum, the immigration courts and at a minimum, the Board of Immigration must look at an argument that's presented. Let's assume I didn't present that argument. Let's assume I presented another argument, totally unrelated to violence. If the board and immigration courts fail to even mention it in passing, that leaves us to wonder, did they even think about it or consider it? So that's the real argument I'm making, not this thing that there's violence in Mexico, don't deport people to Mexico. Let me ask you about another thing not mentioned. He has a 1998 conviction for unlawful use of a weapon in Illinois, right? Correct, correct. Doesn't that make him categorically ineligible for cancellation? It does not, Your Honor. And why not? There's certain offenses that make him ineligible for cancellation or removal. A gun charge, believe it or not, is not one of those. The unlawful use would, though, wouldn't it? Possession of a weapon would make you deportable, but not necessarily inadmissible, Your Honor. And that wasn't even a fact... No, no, but you're saying possession. Now what is the use charge? Well, Your Honor, in this particular case, it would not make him inadmissible because under the immigration regulations, he's considered to have possessed the weapon. But the Illinois charge is unlawful use. Which is, that's the way Illinois frames it, but Illinois, anything, when you possess a weapon in Illinois, it's considered unlawful use of weapon as opposed to... There's no unlawful possession under the state of Illinois criminal code. So it's just a simple possession charge? Simple possession charge. But even regardless of that, the immigration judge and the board never even addressed that one issue. They said he didn't meet the extreme hardship standard. With that... Thank you, Mr. McCullough. Mr. Lawrence? It pleases the Court. My name is Victor Lawrence, and I represent the Attorney General. This Court should dismiss this petition for review for lack of jurisdiction, as this is a discretionary cancellation of removal case, and petitioner has not raised a tolerable constitutional claim or legal claim that would invoke this Court's jurisdiction under 1252A2D. Petitioner is merely trying to shoehorn factual allegations into a legal claim, and the Court should not permit that in this instance. Since the Court took some questions on, or took some interest in the violence in Mexico charge, I'll start with that. I think that there are two things going on here. One is that petitioners, the way petitioner raises an immigration court was very, in a very subtle way. He didn't put any documents in the record, as the Court noted, to show that this was a big issue. There's only some testimony from the petitioner, and perhaps his mother, that they were concerned about violence. But there was no background evidence pointing to why this particular petitioner would be subject to potentially being a victim of violence. And therefore, the Board's not mentioning specifically this argument, which is so subtly raised, is very understandable and permissible. There's no need for the Board to absolutely discuss every single issue that's raised and indicate that it doesn't raise a claim for whatever reason the Board might think. But here, particularly, the Board did evince some awareness of the argument when it said in its opinion, it pointed to the pages in the appeal brief, where petitioner raised this argument about violence in Mexico, and indicated that they weren't persuaded by the arguments that were contained within that subset of pages of petitioner's brief. And as this Court has stated in the Munoz-Pacheco opinion, you don't have to dot every I and cross every T. As long as the Board does something to evince awareness of the argument and rejects it, that is sufficient to be able to have some comfort that the Board considered the issue, as opposed to completely not considering it at all. So we would argue, the Respondent does argue, that the Board did consider that issue, it just didn't specifically write that into its opinion explicitly, but it did reference it by the page numbers within the Respondent's brief, the petitioner's brief in this case. So what petitioner is trying to do is say that the Board failed to consider the cumulative hardship, and he's saying that that's a legal error. But the immigration judge did consider the cumulative hardship, and I point to the decision at page 54 of the record, where the immigration judge specifically says he's considering everything in the cumulative, and the Board also, at page 4 in the record, indicates that it's considering the totality of the circumstances. So at least facially, both the immigration judge and the Board are indicating that they're considering everything that was before them, talking about all the documents, all the evidence, all the testimony that was presented to it. Now, one thing petitioner indicates that was not considered by the Board was the wife's illegal status in the country. But here, again, both the immigration judge and the Board did indicate awareness of that issue. But the immigration judge permissively determined, based on the facts presented to him, that it was more likely, despite what petitioner may have testified to, that it was more likely that the wife was going to go back to Mexico. After all, this petitioner was the breadwinner in the family. The family had been together the entire time. It seemed unlikely to the immigration judge that the wife and children would stay in the United States and that the petitioner would go to Mexico, particularly given the fact that the wife didn't have any legal status to remain here. So, number one, this issue was considered. And number two, it doesn't, even if you were to say it wasn't considered, it certainly doesn't have any, well, it was considered, so it's really not an issue in that regard. The argument about the mortgage on the house. This is one where, again, petitioner failed to raise this as a critical argument. He had the opportunity to give a closing statement to the immigration court, didn't say anything in it about this particular issue. In his application, he merely indicates in his assets, where it asks what assets he has, that he has this mortgage and the house is worth, he says, less than the mortgage that he has remaining to pay on it. But he failed to indicate any importance on this issue in his appellate brief. He only has one sentence on page 24 that discusses it. It's not raised as something that the board should take notice of and absolutely deal with individually in its opinion. But regardless, the board did evince awareness of this argument by citing to pages 6 through 10 of the brief and indicating that it considered that and rejected it. Mr. Larson, do you agree with your opponent's position that the gun conviction is not a disqualifying conviction? I do. So the last item that the petitioner raises that I'll just briefly address is that he says one of the things not considered is that the petitioner wouldn't have no way to reunite with his family or his mother. But again, this is something that the IJ, the immigration judge, reasonably and permissibly determined that it was more likely that the spouse was going to go to Mexico. And didn't feel the need to expound upon this issue further. But again, it's something that's considered in the overall brief that the board evinced awareness to the argument by citing to those page numbers. And therefore, it's not something that the board or the immigration judge failed to consider at all and therefore made no legal error. Unless your honors have any further questions, we would submit with that and ask the court to dismiss this petition for lack of jurisdiction as there's no colorable legal claim or constitution issue that's been raised. And certainly one that's not meritorious. Thank you, your honors. Thank you, Mr. Lawrence. So Mr. Cola, how much time does he have? One minute. Just briefly, with regard to jurisdiction, I believe we met the jurisdictional requirement in this case. With regard to the argument of counsel that the board referred to the page numbers. It did refer to the page numbers of the brief. I would argue that if those arguments are made, you just can't say, well, we read your brief, pages 6 to 10, and that we dismiss your brief or we deny your brief. I would argue that they would have to at least tangentially mention those, even in passing. And we're saying, according to this court's precedent, they have to do that. And if they haven't done that, that gives this court jurisdiction.  The mortgage is relevant because it shows a financial impact on the family. If the family has no resources, then obviously the family would have a greater financial impact on if he gets deported. He's the sole breadwinner. But how does it relate to their going back to Mexico? Well, they have no resources then. If he leaves his family here, as he said he would. Well, I don't understand. Again, I don't understand the relevance of the mortgage. But the mortgage is a mortgage. If they stay in the United States, the house is underwater. Well, then the breadwinner who's getting deported can't pay off that mortgage. The family would become, in essence, homeless. But if he brings his family to Mexico, the mortgage is going to follow him somehow? No, the mortgage won't. But he has to then provide housing for his family. There's nothing for him to sell to bring to Mexico to provide for his family in Mexico, which he testified he has nothing in Mexico to go back to. He has to start from scratch with an entire family. Yes, but if he stays in the United States and the mortgage is foreclosed, then he has no place to live, right? He's making payments on the mortgage, and he can provide for his family in that way. The fact that it's upside down doesn't mean it's being foreclosed on. It means it's a roof for his family. Okay, well, thank you, Mr. Cola and Mr. Lawrence.